UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Marianne Mason,                                                        Civil No. 04-3703 (PAM/RLE)

                             Plaintiff,

v.                                                                     **MEMORANDUM AND ORDER**

UNUM Life Insurance Company
of America,

                             Defendant.

---

This matter is before the Court on cross-Motions for Summary Judgment.[1] For the reasons that follow, Plaintiff's Motion is granted and Defendant's Motion is denied.

**BACKGROUND**

Plaintiff Dr. Marianne Mason claims that Defendant UNUM Life Insurance Company of America ("UNUM") improperly denied her benefits based on her physical disability under the terms of her Long Term Disability Policy ("LTD Policy"), in violation of the Employee Retirement and Income Security Act ("ERISA").

**A.**     **Dr. Mason's Psychological Condition**

On July 13, 2000, Dr. Mason submitted a claim for short-term disability benefits, claiming that she could not work because she suffered from major depression. The onset of this depression was attributable to her six year old daughter's recent diagnosis of an inoperable brain tumor. (UACL at 00013.)  Her attending psychologist, Dr. Deanna Boss, indicated that

---

[1] Defendant also filed a Motion to Strike exhibits attached to the affidavit of Denise Tatyran. Because the Court does not rely on these materials in the disposition of the instant Motions, Defendant's Motion to Strike is denied as moot.

Dr. Mason experienced the same symptoms two years prior, following the death of her infant daughter and divorce from her husband. (Id. at 00012.)  Dr. Boss concluded that Dr. Mason's prognosis was "fair." (Id.)  UNUM approved Dr. Mason's claim for short-term disability benefits and awarded her benefits for twenty-six weeks. (Id. at 01671.)

UNUM then reviewed her claim for long term disability ("LTD") coverage and approved her request. (Id. at 01656, 00182-84.)  Due to the limitations of the LTD Policy, payment of benefits related to mental illness is limited to twenty-four months. (Id. at 00183.)  Dr. Mason received LTD benefits for her psychological condition from September 9, 2000 to September 9, 2002.

**B.     Dr. Mason's Physical Condition**

In January 2000, prior to her initial application for LTD benefits, Dr. Mason had an orthopedic consultation with Dr. Michael Smith. (Id. at 01785.)  Dr. Smith noted Dr. Mason's history of "chronic mechanical low back pain," and that Dr. Mason had received treatment for the pain in the past. (Id.)  Dr. Smith further noted Dr. Mason's more recent complaints of neck and arm pain that had not yet responded to treatment. (Id.)  A radiograph identified "early degenerative changes in the midportion of the cervical spine." (Id. at 01786.)  Dr. Smith noted that Dr. Mason's pain was often exacerbated by her job. (Id. at 01785, 01787.)  He recommended that she undergo "physical therapy, anti-inflammatory medication and the passage of time," but that if "she persists in having substantial neck pain or perhaps even develop arm pain, then she should have an MRI scan." (Id. at 01787.)  Dr. Mason received physical therapy treatment for her pain on an as needed basis. (Id.)  Her physical therapist

2

noted that her condition was amplified by the demands of her job. (Id. at 01781.)

In late April 2000, Dr. Mason was examined by Dr. Mark Heller, an orthopedic surgeon. (Id. at 01776.) Dr. Heller noted that Dr. Mason "has a baseline problem with her back, but has had an exacerbation over the last three weeks." (Id.) Dr. Heller's initial examination concluded that Dr. Mason suffered from "paraspinous musculature spasm . . . in the lumbar spine and paraspinous musculature." (Id.) He noted the extent of her back pain and its aggravation. (Id.) He ordered MRI scans. (Id.)

Dr. Mason's cervical spine MRI showed that she suffered a "[s]mall central right-sided disc herniation C5-6 slightly impressing on the thecal sac with mild degenerative changes in this disc." (Id. at 01778.) Her lumbar spine MRI revealed "L5-S1: Degenerative change in the disc with a small central right-sided disc protrusion consistent with small disc herniation with a tear in the annulus." (Id. at 01780.) Dr. Heller recommended that Dr. Mason continue with conservative therapy and anti-inflammatory medication. (Id. at 01776.)

Over the next several months, Dr. Mason's condition worsened, and in February 2001, she consulted with Dr. Mark Stuckey, co-medical director of Fairview-University Pain Management Center. (Id. at 01476.) Dr. Stuckey's examination reflected that Dr. Mason's neck "[d]emonstrates significant spasm in the cervical strap muscles, trapezius, splenius capitus, levator scapulae, sternocleidomastoids," and "[s]ignificant tenderness over the supraspinatus and infraspinatus," and that her "[r]ange of motion diminished in all directions secondary to pain." (Id. at 01474.) He noted her "history of cervical disc herniation," and her "[h]istory of lumbar disc herniation, low back pain," but that she primarily complained of neck

3

and shoulder pain. (Id.) Dr. Stuckey recommended that Dr. Mason receive trigger point injections and he increased her Celebrex dosage and prescribed Vicodin for her pain. (Id. at 01474-75.) He additionally noted that her pain increased as a result of her job. (Id. at 01475.)

Following this evaluation in February 2001, Dr. Mason continued to seek treatment from Dr. Stuckey. In fact, Dr. Mason consulted with Dr. Stuckey twenty-three times between February 2001 and April 2003. (See id. at 01281-01332; 01473-01504.) After each visit, Dr. Stuckey drafted a consultation note that memorialized a history of Dr. Mason's present condition and that consistently identified Dr. Mason's long and significant history with cervical and lumbar degenerative disc disease. Dr. Stuckey also commented on Dr. Mason's physical examination, assessed her prognosis, and recommended treatment to alleviate her pain. Additionally, these consultation notes described in detail the treatment provided by Dr. Stuckey, which included frequent steroid injections. In each of these consultation notes, Dr. Stuckey consistently assessed Dr. Mason with cervical degenerative disc disease and lumbar degenerative disc disease. Dr. Stuckey's assessment of Dr. Mason's condition worsened over time. During each consultation, Dr. Stuckey recommended that Dr. Mason return for consultations on a monthly basis, and quite often, a bi-weekly basis. (See id.) His prognosis report submitted to UNUM in June 2001 revealed the permanency of Dr. Mason's physical condition in relation to her inability to return to her job as an OB/GYN. (Id. at 00387.)

In April 2003, Dr. Mason's physical examination revealed that she still suffered a diminished range of motion in her neck as well as significant tenderness in her neck. (Id. at

4

01329.) Again, Dr. Stuckey's assessment noted that Dr. Mason still suffered from "cervical-facet arthropathy, cervical-disk disease, lumbar disk disease, and lumbar-facet arthorpathy." Her symptoms also indicated that she suffered "multiple myalgias and trigger points." (Id.) These diagnoses were unchanged in June 2003. (Id. at 01332.)[2] Dr. Stuckey recommended that Dr. Mason consult with Dr. Bradley Helms, a rheumatologist. Dr. Helms diagnosed Dr. Mason with fibromyalgia, who opined that "as a result of [fibromyalgia], I do not necessarily feel she will be able to return to her previous employment as an obstetrician and gynecologist." (Id. at 01059.)

In July 2003, Dr. Mason was examined by Dr. Phillip Haber, a licensed psychologist and certified rehabilitation counselor at Metropolitan Rehabilitation Services, Inc. in Minneapolis. (See id. at 01365-66.) Dr. Haber conducted a vocational evaluation, which included an individual vocational examination. (Id.) Dr. Haber noted that Dr. Mason had suffered lower back pain as early as 1996 and began experiencing cervical spine problems in 1999. He noted that her orthopedic condition had not improved. Dr. Haber ultimately concluded:

> Based upon my examination of Dr. Mason and considering the objective medical record and the physical demands of an OB/GYN Physician, it is this examiner's opinion that Marianne Mason is no longer capable of sustained occupational activity as a Physician/Surgeon in her area of speciality. The physical demands

---

[2] At this time, Dr. Stuckey no longer performed evaluations and assessments and therefore recommended that Dr. Mason consult with another specialist at the Pain Management Center. Dr. Mason was evaluated and treated by Dr. Richard Boortz-Marx, an assistant professor in anesthesia pain medicine at the Pain Management Center. (Id. at 01331-32.)

of this work involve postures that are contra-indicated [] and can be quite physically demanding.

I can think of no OB/GYN position where Dr. Mason could perform comfortably on a <u>sustained</u> basis.

Though she does have a history of depression secondary to the unfortunate death of both her children, it is my opinion that her continuing orthopedic problems prevent her from engaging in the physical demands of her medical specialty and that it is the orthopedic problems that are the primary disabling component.

(<u>Id.</u> at 01365) (emphasis in original).

### C. Dr. Mason's Application for Long Term Disability Benefits

#### 1. The Policy

Dr. Mason worked for Fairview Hospital, who purchased the UNUM LTD Group Policy for its employees. This LTD Policy is very broad. It allows for the payment of disability benefits if a participant demonstrates that she is "disabled due to sickness or injury" and "require[s] the regular attendance of a physician." (<u>Id.</u> at 00998.) A participant is "disabled" if he or she cannot perform "each of the material duties of [his or her] regular occupation," or while unable to perform all of the material duties on a full-time basis, he or she is performing at least one of the material duties of the regular occupation or another occupation on a part-time or full-time basis and earning at least twenty percent less per month than pre-disability earnings. (<u>Id.</u> at 01000.) The LTD Policy further defines a physician's "regular occupation" as the "speciality in the practice of medicine" that the physician was practicing prior to the date of disablement. Dr. Mason submits that she is physically disabled under the latter definition of disabled – that is, at the time her benefits ceased on September 9, 2002, she was able to

6

perform at least one of the material duties of her regular occupation or another occupation on a part-time basis and earned less than twenty percent of her pre-disability earnings.[3] (Pl.'s Mem. Supp. Mot. Summ. J. at 25.)

### 2. Dr. Mason's Application, Denial, and Appeal of LTD Benefits

Dr. Mason applied for and received LTD benefits for her psychological disability. She began to receive these benefits in September 2000. In late April and May 2001, Dr. Mason reported to UNUM that her six-year old daughter had recently passed away. (Id. at 01646; 00348.) Dr. Mason's monthly progress report indicated that she was unable to return to her job as an OB/GYN. (Id. at 00348.) This progress report included two physicians reports: one from her treating psychologist, and one from Dr. Stuckey, who was treating her for her physical condition. (Id. at 00347, 00349.) Dr. Stuckey's report indicated that it was "unknown" how long Dr. Mason would be unable to perform her occupation. (Id. at 00347.) In June 2001, Dr. Stuckey reported that Dr. Mason's condition was "permanent" and that she would be unable to return to her job. (Id. at 00387.) Dr. Mason informed UNUM that she had additional medical records, which included medical records regarding her back and neck condition. (Id. at 01646.) Dr. Mason told UNUM that she would forward the medical information to it for its review. (Id.) In August 2001, Dr. Mason again informed UNUM that her psychological condition had stabilized but that she was unable to return to her previous occupation as an OB/GYN due to her orthopedic condition. (Id. at 01638.) She told UNUM about her orthopedic consultations,

---

[3] The parties do not dispute that Dr. Mason earned less than twenty percent of her pre-disability earnings at the time her benefits ceased.

her treatments for pain, and the historical nature of her orthopedic condition. (Id.) UNUM again requested Dr. Mason provide the necessary medical records, which she did.

Throughout the remainder of 2001 and the beginning of 2002, UNUM sought and received Dr. Mason's medical records for both her psychological and physical condition. Based on those records and its evaluation, UNUM continued Dr. Mason's LTD benefits. In July 2002, UNUM notified Dr. Mason that her LTD benefits would terminate due to the policy limitations. (Id. at 01595.) It informed her that her benefits would cease on September 9, 2002. (Id.)

On September 4, 2002, UNUM again notified Dr. Mason that her LTD benefits would terminate. UNUM indicated that it had reviewed her claim "from a physical perspective," and that despite its review of her medical records that it possessed in December 2001 from Dr. Stuckey, Dr. Smith, Dr. Heller, and her MRI report, "there is no impairment from an orthopaedic standpoint." (Id. at 01593.) Specifically, UNUM concluded:

> There are imaging studies that show abnormalalities but these do not necessarily convert to physical impairment. These would not be expected to cause clinical difficulties. The records do not report physical findings that would preclude impairment. In the latest note from Dr. Stuckney [sic] he relates that you have done a significant amount of traveling, including air trips to Africa. He states that this has increased your neck and arm pain but our medical staff opines it is significant that you were able to perform this traveling. Based on this information, you are not considered disabled according to the [disability definition] and no benefits will be paid.

(Id. at 01593.) Although UNUM denied benefits for a physical disablement, it further requested Dr. Mason to provide additional information, including medical records from January 2002 onward, a list from her physician identifying limitations and restrictions, a

8

completed "Functional Capacities Evaluation" form, and a copy of her treatment plan from her physician. (Id. at 01592.)

On September 23, 2002, Dr. Mason's physician, Dr. Smith, submitted a comment on Dr. Mason's physical condition. Dr. Smith noted that when he first examined Dr. Mason in January 2000, she had limitation of motion with provocation of pain, and "degenerative changes in the mid portion" of her cervical spine. He also noted that she had degenerative disc disease, and that her complaints of central, cervical, and radiating shoulder pain were entirely consistent with her medical records, including her radiographs and clinical examinations. (Id. at 01759.) He noted that she had "degenerative morphology present at multiple levels and the upper disc was somewhat painful," and that she indeed suffered a physical impairment. (Id.) Dr. Smith opined that these conditions would "have a significant impact on the performance of your occupation as an obstetrician and surgeon." (Id.)

On October 1, 2002, Dr. Stuckey likewise commented on Dr. Mason's physical condition. Dr. Stuckey explained that he had treated Dr. Mason for over eighteen months and that his diagnosis and treatment of Dr. Mason was directly contrary to UNUM's erroneous conclusions. (Id. at 01760.) He indicated that although Dr. Mason's physical condition "may have started initially as a disc disease," the "repeated trauma over the years of practice caused by bending over an operating room table/exam room table" placed "great stress on the discs." (Id. at 01761.) He further opined that this repeated trauma affected Dr. Mason's cervical facets, and that medical literature supported that "the facet joints are more often the cause of unremitting irremediable neck pain than all the other cervical spine structures combined." (Id.

9

at 01762-63.)   He also indicated that "facet arthropathy [] does not show up on any of the imaging studies available," including CT scans and MRI scans, but rather may only be diagnosed through a series of injections as he had done. (Id. at 01763, 01765.)   Accordingly, Dr. Stuckey expressly concluded that "Dr. Mason's problems began as disc disease and have progressed to facet arthropathy . . . a chronic problem with few long term solutions," and that these problems were the source of Dr. Mason's permanent and progressive disability.   (Id. at 01764, 01766.)

On November 8, 2002, Dr. Smith submitted an additional letter to UNUM. He agreed with Dr. Stuckey's assertion that facet arthropathy may not be diagnosable from current imaging scans, but rather was verifiable through injection treatment. (Id. at 01772.)   Dr. Smith concluded that Dr. Mason's condition limited and restricted her activities including: "the avoidance of repetitive vertical gaze, the avoidance of fixed staring type postures, and the avoidance of prolonged twisting, turning and head down type activities." (Id.)   He further opined that some of the duties of an OB/GYN would "certainly exacerbate her neck." (Id.)

In March 2003, Dr. Mason appealed the denial of her LTD benefits premised on her physical disability. The appeal included a recitation of her physical condition as well as several exhibits. These exhibits included Dr. Mason's personal assessment of her occupational duties and her physical limitations in relation to these duties and statements from a certified nurse-midwife who worked closely with Dr. Mason and who similarly opined on the physical demands of the OB/GYN profession and Dr. Mason's struggle to meet those physical demands. (See id. at 01455-01527.)

10

UNUM's May 5, 2003, internal claim documentation stated that:

> the claimant has reported chronic neck and back complaints since the onset of her claim, with continuous treatment through the duration of the claim. She has two attending physicians, Dr. Smith and Dr. Stuckey, supporting her disability claims based on a physical impairment. Although there appears to be a lack of objective evidence to explain her pain complaints, the claim investigation has not fully evaluated her claim from the perspective of adequacy, consistency or credibility of her complaints. In addition, [restrictions and limitations] that were identified in subsequent [] medical reviews have not been evaluated from a vocational standpoint to determine whether they support impairment from a physical condition. The additional information in the [] file has not been considered in the LTD determination.

(Id. at 01101.) On May 6, 2003, UNUM notified Dr. Mason that it needed to complete an additional investigation to determine whether she was eligible for further benefits. (Id. at 01099.) UNUM continued to pay benefits under a Reservation of Rights. (Id.)

UNUM referred Dr. Mason's appeal to Dr. Brian Brock, a doctor who was board certified in nuclear cardiology, radiology, and nuclear medicine. (See id. at 01092.) Dr. Brock noted Dr. Mason's physical pain, but concluded that diagnostic imaging did not corroborate her disability or pain, that her medical records did not evidence facet joint abnormalities or other claimed physical disablements, and that Dr. Mason's treating physicians were essentially wrong. (Id. at 01092-93.) There was no vocational review of Dr. Mason's claim. Nevertheless, in June 2003, UNUM informed Dr. Mason that her appeal was denied: "Based on the medical information submitted to date, there is no objective evidence to support restrictions or limitations precluding Dr. Mason from performing the material and substantial duties of her occupation." (Id. at 01083-84.)

On September 15, 2003, Dr. Mason again appealed the denial of LTD benefits. She

11

submitted additional information, including the report from her vocational expert, Dr. Philip Haber, who opined that Dr. Mason's disablement prevented her from performing her job as an OB/GYN. She provided updated medical records and additional evidence. This included a clinical note by Dr. Stuckey, who again commented on the insufficiency of imaging scans as a diagnostic and analytical tool. (Id. at 01324.) He noted that imaging studies often resulted in "a significant false positive and false negative rate" and that "the findings need to be interpreted in light of the patient's response and function." (Id.) Dr. Mason also included a letter from Dr. Helms, her most current doctor, who diagnosed Dr. Mason with fibromyalgia and concluded that Dr. Mason was unable to return to her job as an OB/GYN. (Id. at 01058-59.)

UNUM submitted Dr. Mason's file and her newly submitted appeal evidence to Dr. George Seiters. Dr. Seiters, an orthopedic surgeon, ultimately concluded that the evidence was "consistent with permanent orthopedic [restrictions and limitations] for highly repetitive, prolonged or extreme cervical spine positioning," and that it was likewise "consistent with permanent orthopedic [restrictions and limitations] for highly repetitive bending and twisting of the lumbar spine, some degree of lifting restriction somewhere in the [] light to heavy category and accommodation for change of position on a frequent basis." (Id. at 01048.) Dr. Seiters did not discuss Dr. Mason's fibromyalgia or facet arthropathy.

UNUM then referred Dr. Mason's file to Richard Byard, a vocational consultant. Based on Dr. Seiters's report, Mr. Byard concluded that he needed "further clarification and/or quantification" of Dr. Seiters's identified restrictions and limitations. (Id. at 01046.) Dr.

12

Seiters was unable to provide additional clarification to Mr. Byard. (Id. at 01044.)

Dr. Schwenk, an OB/GYN and internal consulting physician, apparently met with Mr. Byard. There is no report in the record by Dr. Schwenk, no evidence that Dr. Schwenk reviewed Dr. Mason's file, or was otherwise familiarized with the facts of this case. Mr. Byard summarized their meeting and ultimately found that Dr. Schwenk concluded that the restrictions and limitations identified by Dr. Seiters would not prevent an OB/GYN from performing the job. Thus, Mr. Byard concluded that "it would appear that the claimant would not be precluded from performing the material and substantial duties of her occupation." (Id. at 01042.) UNUM sent a final denial letter to Dr. Mason on February 17, 2004. (Id. at 01032-01038.)

UNUM contends that it properly denied LTD benefits. It argues that the medical evidence does not establish restrictions and limitations that preclude Dr. Mason from performing her substantial job duties, and that in the alternative, even if her physical condition is severe, her disabling condition is the result of her psychological condition which has a maximum benefit period of twenty-four months. Dr. Mason argues that UNUM improperly denied her LTD benefits, and that the record demonstrates her severe physically disabling condition.

**DISCUSSION**

**A.   Standard of Review**

    1.   Summary Judgment

Summary judgment is proper if there are no disputed issues of material fact and the

13

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Where, as here, the parties agree that there are no disputes as to any material facts, summary judgment is appropriate.

    2.    ERISA Review

In the first instance, the Court must determine whether the disability plan at issue vested UNUM with the "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If UNUM does not have such discretionary authority, the Court must review the denial of benefits de novo. Id. In this case, the parties agree that the Court must review the denial of benefits de novo. Thus, the Court must evaluate the record to determine if Dr. Mason is disabled under the terms of the LTD Policy, without giving deference to UNUM's decision. See Davidson v. Prudential Ins. Co. of Am., 953 F.2d 1093, 1095 (8th Cir. 1992).[4]

---

[4] "When a de novo standard of review applies, a district court has more discretion to allow the parties to introduce evidence in addition to that submitted to the plan decision-maker." McKeehan v. Cigna Life Ins. Co., 344 F.3d 789, 793 (8th Cir. 2003) (citing Donatelli v. Home Ins. Co., 992 F.2d 763, 765 (8th Cir. 1993)). However, the Court should not exercise

**B.     Occupational Duties**

Dr. Mason is an OB/GYN. Dr. Mason explained that her occupational duties included "routine surgical procedures such as hysterectomies, laparoscopies, oophorectomies, and cesarian sections." (UACL at 01514, 01510.) Her occupational duties also include vaginal child delivery, version procedures, and episiotomy repair. (Id.) These duties require an OB/GYN to sustain various physical positions for varying degrees of time. (See id. at 01457-60.) In addition, Dr. Mason's job also included patient visits, routine exams, and other administrative duties.[5] (See id., 00520-21.) It also requires the physician to work on-call over a twenty-four hour period, in which the doctor may perform many different procedures and examinations. The occupational profile compiled by UNUM is consistent with these stated duties. (See id. at 00520-21.) It also identifies the physical demands of the job, which include sitting, standing, walking, light lifting, frequent handling, fingering, reaching, and occasional

---

such discretion absent good cause. See Donatelli, 992 F.2d at 765. The Court may also "make findings of fact after a bench trial or on a stipulated fact record, rather than conducting the summary judgment review that is customary when applying the abuse-of-discretion standard." McKeehan, 344 F.3d at 793. Here, the Court finds that the record sufficiently demonstrates that Dr. Mason is disabled under the LTD plan and thus supplementation of the record is unnecessary.

[5] UNUM contends that Dr. Mason subjectively describes her occupational duties as an OB/GYN at Fairview, and that the Court should rather evaluate the occupational duties of an OB/GYN in the national economy. According to UNUM, its vocational consultant accurately identified the occupational duties of an OB/GYN, and that only these duties should be considered in determining whether Dr. Mason is disabled. However, UNUM's vocational consultant and an UNUM consulting OB/GYN merely discussed the "physical postures and position required to perform obstetrical surgical procedures," (id. at 01034), and failed to expand its discussion to the other occupational duties of an OB/GYN. Although the occupational duties of an OB/GYN in the national economy are relevant to identifying the substantial duties of an OB/GYN, it is not exclusive.

bending and stooping. (Id. at 00517.) An OB/GYN requires a "full range of motion and sensation in upper extremities," and although the profile generally indicated that "cervical limitations/discomfort should not present a significant problem," it did not conclude that such restrictions would never interfere with the occupational duties of an OB/GYN. (Id.) Prior to her disability, Dr. Mason performed all of the substantial duties of an OB/GYN, which included surgeries, deliveries, routine visits, on-call periods, and other medical procedures.

**C.  Physical Disability**

Under the terms of the LTD Policy, Dr. Mason must demonstrate that she either cannot perform each of the material duties of her occupation, or otherwise can perform at least one of the material duties but earns less than twenty percent of her pre-disability earnings. Based on the Court's de novo review, UNUM was in error to deny Dr. Mason's claim for LTD benefits. The substantial duties of Dr. Mason's occupation include surgery, deliveries, physical exams, and other medical procedures. The physical demands of these duties require the use of her hands, which includes reaching, pulling, pushing, lifting, and carrying. It also requires her to assume various physical positions, including sitting, standing, walking, bending, and stooping. The duration and extent of these physical requirements depend on the procedure, the patient, and the particular situation.

The record reveals that Dr. Mason has consistently consulted with an orthopedic physician and received treatment for her physical pain since 2000. Her medical records indicate that she suffered from, among other things, degenerative disc disease and lumbar degenerative disc disease. As a result of these conditions, Dr. Mason suffered limited

16

mobility, increased pain, tenderness, and numbness. Dr. Mason notified UNUM in 2001 of her physical disablements, and that such disablements prevented her from returning to her job as an OB/GYN. She consulted with Dr. Stuckey, a orthopedic pain management specialist, for over two years, who continuously identified Dr. Mason's physical condition, noted Dr. Mason's lack of improvement, and documented her extensive therapy and treatment. He opined that her physical condition prevented her from returning to her job as an OB/GYN.

Dr. Mason consistently supplied to UNUM the medical documentation completed by her treating doctors. These doctors persistently opined that Dr. Mason's imaging scans, treatment regime, and other evidence demonstrated that Dr. Mason was physically limited from performing her job as an OB/GYN. Dr. Smith placed limitations and restrictions on Dr. Mason, which prohibited her from repetitive vertical gaze, fixed staring-type postures, and prolonged twisting, turning, and head-down type activities. These limitations were not disputed by UNUM, and indeed, UNUM's own Dr. Seiters essentially agreed with these limitations. Based on a personal examination of Dr. Mason and her medical records, a vocational rehabilitation counselor concluded that the limitations and restrictions of Dr. Mason's physical condition prevented her from performing her duties as an OB/GYN.

UNUM's conclusions contradict the medical evidence and are unpersuasive to the Court. UNUM's internal medical personnel reviewed Dr. Mason's medical records and physician reports. Although the prospect of a "field visit" was proposed, at no time throughout the claims process did UNUM perform an on-site analysis of Dr. Mason. (See id. at 00386.) UNUM's medical personnel opined on Dr. Mason's condition solely based on their removed

17

examination of her medical records – which, as indicated by Dr. Smith and Dr. Stuckey, and supported by medical literature, did not necessarily reveal the disabling extent of Dr. Mason's physical condition or chronic pain. In addition, the diagnoses, treatment, and physical condition of Dr. Mason were generally not contradicted by UNUM. Rather, UNUM's medical personnel plainly disputed the analysis of Dr. Mason's complaints of pain and permanent nature of her physical injury, without explanation. Indeed, Dr. Seiters was unable to supplement or otherwise quantify his own medical conclusions but rather relied on his conclusory report. Moreover, Dr. Brock's practice and experience did not relate to orthopedics. UNUM's vocational analysis is wholly incomplete and conclusory, relying on the broad conclusions of an in-house consulting doctor who opined solely on the surgical duties of an OB/GYN, without an examination or even a reference to Dr. Mason's medical records or condition. In addition, the suggestion that Dr. Mason's job could be completed with accommodation further amplifies the removed nature of UNUM's analysis and conclusions and contradicts the express language of the LTD Policy. It is likewise of no moment whether Dr. Mason could modify her occupational duties in light of her restrictions and limitations because Dr. Mason performed her job as an OB/GYN without restriction prior to her disabling condition and the express language of the LTD Policy does not impose such a burden on Dr. Mason.

In addition, the Court finds that Dr. Mason's physical disablement existed and worsened distinct from her psychological disability. Although both claims were made in close proximity to one another, the evidence establishes that Dr. Mason suffered from these physical impairments prior to the onset of her psychological disability. Moreover, her physical

limitations were exacerbated by the physical demands of her job and were unrelated to her psychological condition. Although the nature of Dr. Mason's psychological disablement was sensitive, and at one time was severe, the medical evidence demonstrates that this disablement improved with time while her physical impairments worsened. Accordingly, the Court concludes that Dr. Mason's physical disablement exists independent of her psychological condition.

Dr. Mason has sufficiently demonstrated that her spine, back, and neck condition renders her unable to perform each of the material duties of a practicing OB/GYN. She suffers from a diminished range of mobility and numbness in her upper extremities, and she is unable to sit or stand for extended periods of time. She cannot twist, turn, or bend over. Significant portions of her daily schedule are devoted to pain management and treatment, preventing her from fulfilling the demands and obligations of an OB/GYN. These limitations prevent her from performing the surgical tasks associated with her job, as well as deliveries and other intense procedures that are undoubtedly substantial and material to her pre-disability occupation as an OB/GYN. Although Dr. Mason has made efforts to perform other occupational duties, the broad language of the LTD Policy only requires her to show that she could not perform each of the material duties of an OB/GYN. Dr. Mason has sufficiently demonstrated that, at the time her benefits ceased, she could not perform each of the material duties of her pre-disability occupation as an OB/GYN, and thus, under the broad terms of the LTD Policy, she is entitled to the payment of benefits.

**CONCLUSION**

After careful review of the record and under a de novo review, the Court finds that Dr. Mason has sufficiently demonstrated that she was unable to perform each of the substantial duties of her pre-disability occupation as an OB/GYN as of September 10, 2002. Accordingly, under the terms of the LTD Policy, Dr. Mason is disabled and entitled to the payment of LTD benefits. Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Strike (Clerk Doc No. 41) is **DENIED as moot**;

2. Plaintiff's Motion for Summary Judgment (Clerk Doc. No. 19) is **GRANTED**;

    a. Plaintiff is awarded retroactive monthly LTD benefits beginning August 2003 to the present date in the monthly amount of $10,976.13;

    b. Plaintiff is awarded interest for each unpaid benefit installment until the date benefits are paid; and

3. Defendant's Motion for Summary Judgment (Clerk Doc. No. 11) is **DENIED**;.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: September 27, 2005

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge